THORNBURG, Judge.
 

 A jury found defendant guilty of trafficking in at least 400 grams of cocaine by transportation, by possession, and by delivery, as well as conspiracy to traffic in cocaine. The trial court consolidated the offenses for judgment and sentenced defendant to an active prison term of 175 to 219 months. Defendant gave notice of appeal in open court.
 

 Narcotics Agent Gary Owens of the Cumberland County Sheriff's Department testified at defendant's trial that he arranged to make an undercover cocaine purchase from Ariel Moheno-Morales through an informant, T.H. On 17 June 2002, after days of negotiations between Morales and T.H. conducted on Owens's cellular telephone,Owens and T.H. met with Morales at a house located at 6504 Clinton Road. With T.H. serving as his interpreter, Owens arranged to buy one and one-half kilograms of cocaine from Morales for $37,500.00. The transaction was scheduled for 9:00 the following morning at the same address.
 

 Owens dispatched a Special Response Team to Clinton Road at 7:50 a.m. on 18 June 2002, and drove to the location with T.H. at 9:00 a.m. Upon their arrival, Owens noticed a blue and gray pick-up truck parked in back of the house and saw defendant standing on the back porch. Morales approached Owens' vehicle and asked for the money. When Owens asked to see the cocaine, Morales brought him to the back porch and asked him to sit down. Morales said something to defendant about "cocaine" and pointed to the blue truck. Defendant walked off of the porch and retrieved a brown grocery bag from behind the truck's driver's seat. Defendant returned to the porch and set the grocery bag down at Owens's feet. Inside the bag were two packages containing 223.7 grams and 995.1 grams of cocaine, respectively. Saying he was going to get the money, Owens returned to his vehicle and gave the take-down signal. Members of the Special Response Team converged on the house, arrested Morales and defendant, and seized the cocaine. In the glove box of the blue truck, police found a vehicle tax notice listing defendant as the truck's owner and a W-2 form in defendant's name. A cellular phone was lying in the front seat.
 

 Cumberland County Sheriff's Corporal Gregory J. Moore, a member of the Special Response Team, testified that he observeddefendant walk from the porch to the truck, open and shut the door and return to the porch.
 

 Morales testified against defendant pursuant to a plea agreement with the State. Initially, he disavowed any knowledge of defendant, as follows:
 

 Q. Do you know the defendant? . . . .
 

 A. No. No.
 

 Q. Do you recognize the person seated to my left in the red shirt at the far table, take a look?
 

 A. Uh, no, no, I don't know anything about him.
 

 The court excused the jury and addressed Morales, asking if he had an agreement to testify truthfully. Morales responded, "My answer is that that man, I don't know him." The court allowed Morales to confer with his counsel. On further
 
 voir dire
 
 examination, Morales acknowledged knowing defendant. When asked why he had denied knowing defendant, Morales responded, "Because [defendant] told me not to say yes." Morales confirmed that defendant had threatened him while they were in jail together in the morning before trial. Defendant told Morales that he "was gonna have problems[,]" that defendant "knew a lot of people[,]" and that Morales "could lose [his] life at any moment." The trial court ruled that the prosecutor could ask Morales about his conversation with defendant at the jail as a means of explaining his earlier testimony to the jury. The court instructed the prosecutor not to reveal to the jury that a threat was made. When the trial resumed, Morales testified that he had a conversation with defendant in the morning before trial, and that he had denied knowing defendant based upon that conversation. He indicated that he was prepared to resume his testimony after speaking with his attorney. He then reversed his prior testimony, admitting that he knew defendant and claiming defendant paid him to deliver drugs to buyers. Three weeks before the transaction with Owens, Morales arranged for T.H. to purchase a kilogram of cocaine from defendant. In return for his assistance, defendant paid Morales $1,000.00. Morales also arranged the sale to Owens on 18 June 2002, but defendant brought the cocaine to Clinton Road in his truck. Morales expected to earn $2,000.00 from defendant's sale to Owens.
 

 On appeal, defendant claims the trial court erred in failing "to prohibit" a portion of the prosecutor's closing argument alluding to Morales's performance on the witness stand and describing him as "scared" of defendant, as follows:
 

 The point here is Mr. Morales, like I told you in my opening, is a middleman. He worked in bricks. . . . You saw what happened to him when he came into this courtroom. He was nervous. He shut down. Wouldn't even look at [defendant]. He was scared.
 

 They had a conversation this morning. And it scared him. But he finally came forward and told you what happened. . . .
 

 Defendant claims that no evidence supported the assertion that Morales was afraid of defendant. Although he did not object to the prosecutor's remarks, defendant insists that the trial court's failure to intervene
 
 ex mero motu
 
 entitles him to a new trial. "When a party fails to object during closing arguments, 'the trial court is not required to intervene
 
 ex mero motu
 
 unless the argument strays so far from the bounds of propriety as to impede defendant's right to a fair trial.'"
 
 State v. McNeil,
 

 350 N.C. 657
 
 , 684,
 
 518 S.E.2d 486
 
 , 503 (1999) (quoting
 
 State v. Atkins,
 

 349 N.C. 62
 
 , 84,
 
 505 S.E.2d 97
 
 , 111 (1998),
 
 cert. denied,
 

 529 U.S. 1024
 
 ,
 
 146 L. Ed. 2d 321
 
 (2000)). To show an abuse of discretion by the trial court, defendant must show that the State's conduct was grossly improper and likely influenced the jury's verdict.
 
 Id.
 
 at 684-85 (quoting
 
 State v. Green,
 

 336 N.C. 142
 
 , 188,
 
 443 S.E.2d 14
 
 , 41,
 
 cert. denied,
 

 513 U.S. 1046
 
 ,
 
 130 L. Ed. 2d 547
 
 (1994);
 
 State v. Covington,
 

 290 N.C. 313
 
 , 328,
 
 226 S.E.2d 629
 
 , 640 (1976)).
 

 The prosecution "is allowed wide latitude in argument to the jury and may argue all of the evidence which has been presented as well as reasonable inferences which arise therefrom."
 
 McNeil,
 

 350 N.C. at 685
 
 ,
 
 518 S.E.2d at 503
 
 (quoting
 
 State v. Guevara,
 

 349 N.C. 243
 
 , 257,
 
 506 S.E.2d 711
 
 , 721 (1998)),
 
 cert. denied,
 

 526 U.S. 1133
 
 ,
 
 143 L. Ed. 2d 1013
 
 (1999). Likewise, the prosecutor is free to comment upon a witness's demeanor, inasmuch as it is displayed to the jury.
 
 See State v. Campbell,
 

 340 N.C. 612
 
 , 630,
 
 460 S.E.2d 144
 
 , 153 (1995) (citing
 
 State v. Cummings,
 

 323 N.C. 181
 
 , 192,
 
 372 S.E.2d 541
 
 , 549 (1988)),
 
 cert. denied,
 

 516 U.S. 1128
 
 ,
 
 133 L. Ed. 2d 871
 
 (1996).
 

 We believe the prosecutor's argument remained within the bounds permitted by the evidence and the reasonable inferences supported thereby. In course of his testimony, Morales deniedknowing defendant in any capacity and then acknowledged that he worked for defendant arranging drug transactions. Morales also attributed his initial false denial to a conversation he had with defendant on the morning of trial. The evidence thus showed both that Morales perjured himself in a manner favorable to defendant and that he did so because of a conversation with defendant just before trial. To the extent Morales displayed a nervous, fearful deportment and was unwilling to look at defendant, it was reasonable for the prosecutor to suggest a link between his demeanor, his patently false testimony and his earlier conversation with defendant.
 
 See State v. Hinson,
 

 341 N.C. 66
 
 , 73-74,
 
 459 S.E.2d 261
 
 , 266 (1995).
 

 Even assuming the argument was improper, we find no calculated or gross misconduct by the prosecutor warranting
 
 ex mero motu
 
 intervention by the trial court. We note that the prosecutor actually downplayed the significance of Morales's testimony, telling the jury, "[Y]ou can almost - you could almost forget about whatever he said. You pretty much can." The prosecutor emphasized instead the direct observations of Owens, whose testimony established defendant's actual possession, transportation, and delivery of the cocaine from the truck to Owens on the porch. Owens's testimony was sufficient to show an agreement between defendant and Morales to provide him with the cocaine. Accordingly, defendant's assignment of error is overruled. The record on appeal contains additional assignments of error which are not addressed in defendant's brief to this Court. Pursuant to N.C. R. App. P. 28(b)(6), we deem them abandoned.
 

 No error.
 

 Judges HUDSON and STEELMAN concur.
 

 Report per Rule 30(e).